IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

LEAH H.,

                            Plaintiff,

            v.                                    Civil Action No.
                                                  3:23-CV-591 (DEP)

MARTIN J, O'MALLEY,
Commissioner of Social Security,[1]

                            Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

LACHMAN, GORTON LAW FIRM        PETER GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, NY 13760

FOR DEFENDANT

SOCIAL SECURITY ADMIN.          CANDACE BROWN CASEY, ESQ.
6401 Security Boulevard
Baltimore, MD 21235

_____

[1]      Plaintiff's complaint named Kilolo Kijakazi, in her official capacity as the Acting Commissioner of Social Security, as the defendant. On December 20, 2023, Martin J. O'Malley took office as the Commissioner of Social Security. He has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change. See 42 U.S.C. § 405(g).

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>ORDER</u>

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), are cross-motions for judgment on the pleadings.[2]  Oral argument was conducted in connection with those motions on July 17, 2024, during a telephone conference held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by

---

[2]    This action is timely, and the Commissioner does not argue otherwise.   It has been treated in accordance with the procedures set forth in the Supplemental Social Security Rules and General Order No. 18.   Under those provisions, the court considers the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

reference, it is hereby

ORDERED, as follows:

1)   Plaintiff's motion for judgment on the pleadings is GRANTED.

2)   The Commissioner's determination that plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is VACATED.

3)   The matter is hereby REMANDED to the Commissioner, without a directed finding of disability, for further proceedings consistent with this determination.

4)   The clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

David E. Peebles
U.S. Magistrate Judge

Dated:    August 7, 2024
          Syracuse, NY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------x
LEAH M. HAWK,

                              Plaintiff,

vs.                           Civil Action No. 3:23cv00591

MARTIN J. O'MALLEY,
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

-------------------------------------------x


        Transcript of a Decision from a Teleconference

Hearing held on July 17, 2024, the

HONORABLE DAVID E. PEEBLES, United States Magistrate

Judge, Presiding.




                    A P P E A R A N C E S

For Plaintiff:        LACHMAN, GORTON LAW FIRM
                      P.O. Box 89
                      1500 East Main Street
                      Endicott, New York 13760-0089
                        BY:  PETER A. GORTON, ESQ.


For Defendant:        SOCIAL SECURITY ADMINISTRATION
                      6401 Security Boulevard
                      Baltimore, Maryland 21235
                        BY:  CANDACE BROWN CASEY, ESQ.



                *Lisa M. Mazzei, RPR*
        *Official United States Court Reporter*
                *10 Broad Street*
              *Utica, New York  13501*
                *(315) 266-1176*

2

1                   (The following is an excerpt of a

2                    teleconference hearing held on 7/17/2024.)

3           THE COURT:  All right.  Let me begin by thanking

4    both of you for excellent presentations.  I have enjoyed

5    working with you.  This was an interesting case with a great

6    deal of evidence to parse through, and so I -- I enjoyed

7    working with you, and I think I was able to arrive at a fair

8    determination.

9           Plaintiff has commenced this proceeding pursuant to

10   42 United States Code Section 405(g) and 1383(c)(3) to

11   challenge an adverse determination by the Acting Commissioner

12   of now the Commissioner of Social Security, finding that she

13   was not disabled at the relevant times and therefore

14   ineligible for the benefits sought.  The background is as

15   follows:

16           Plaintiff -- and before I get into the substance, I

17   should, for the record, state that we established at the

18   outset of oral argument that despite the fact that the

19   consent originally given by plaintiff was to

20   Magistrate Judge Daniel J. Stewart, plaintiff has consented

21   to my deciding the issue, since it has been transferred to me

22   by our Chief Judge.

23           In terms of background, plaintiff was born in July

24   of 1975.  She is currently 49 years of age.  She just turned

25   49.  She stands 4 foot 11 inches in height and has weighed,

1   at relevant times, between 140 and 160 pounds.

2          Plaintiff is divorced.  She has one child who does

3   not live with her.  She is, or at least was at one time

4   living in Endicott with her aunt.  Plaintiff has a high

5   school education and attended regular classes.  She has

6   apparently taken some college courses as well.

7          Plaintiff is right-handed.  She does not have a

8   driver's license due to apparently some driving while

9   intoxicated convictions, but stated that she could drive, if

10  she did have a license.

11         Plaintiff last worked in late 2013 or early 2014.

12  While working, she was, at various times, a receptionist.

13  She worked at an answering service, she worked in data entry,

14  and she was a medical assistant.

15         Physically, plaintiff suffers from several

16  impairments, including obesity, myofascial pain syndrome

17  associated with changes in her spine; left ankle pain or

18  sprain, bilateral knee pain, asthma and hypertension.  She

19  has undergone multiple left knee surgeries, most recently in

20  June of 2022.

21         Mentally, plaintiff's condition has been variously

22  diagnosed, including as post-traumatic stress disorder, or

23  PTSD, bipolar disorder, generalized anxiety disorder, panic

24  disorder with agoraphobia, depression.  She has a history of

25  severe alcohol and polysubstance abuse, and a personality

4

1    disorder.

2             Plaintiff stopped drinking in 2014, after

3    undergoing rehabilitation at New Horizons.  She did have a

4    one-day binge in April of 2017 that resulted in her being

5    sent to CPEP.

6             She apparently hears voices and sees

7    hallucinations, both auditory and visual.  She has difficulty

8    leaving her house.  She's had three psychiatric

9    hospitalizations; a history of cutting herself, potential

10   suicide ideation or attempts.

11            She has been seen by various providers.  Her

12   primary is Physician's Assistant Kacy Zelesnikar, who she has

13   seen since January of 2014.

14            In terms of activities of daily living, plaintiff

15   is able to dress, bathe, groom.  She does some cooking.  She

16   cleans, she does laundry, she does occasional shopping.  She

17   watches television, listens to the radio.  She takes public

18   transportation, although primarily through Medicaid vans and

19   cabs, and sometimes the bus.

20            Plaintiff smokes approximately a half pack of

21   cigarettes a day.

22                 (Peter Gorton, Esq. was disconnected from the

23                  teleconference.)

24            THE COURT:  We just lost Attorney Gorton.  Let's

25   wait and see if he rejoins.

1          Attorney Casey Brown, have you been able to hear

2    me?  Brown Casey?

3          MS. BROWN CASEY:  Yes, your Honor.  I have.

4          THE COURT:  And, Lisa, our court reporter, you're

5    able to hear me?

6          COURT REPORTER:  Yes, Judge.

7               (Peter Gorton, Esq. was reconnected to the

8                teleconference.)

9          THE COURT:  We lost you for a second.

10          MR. GORTON:  I know.  I have Attorney Brown Casey's

11    computer on my phone or something.  I don't know.  It -- I

12    was listening and it just died, so I called it right back.

13          THE COURT:  All right.  Well, let me pick up where

14    I left off.

15          Procedurally, plaintiff applied for a Title II and

16    Title XVI benefits under the Social Security Act in July of

17    2016, alleging an onset date for her disability of October --

18    November 4, 2013.

19          At page 377 of the administrative transcript, she

20    claimed disability based on obsessive compulsive disorder,

21    post-traumatic stress disorder, anxiety, bipolar disorder,

22    schizoaffective disorder, depression, bulging discs, left

23    ankle impairment, hypertension and asthma.

24          A hearing was conducted on August 20, 2018, by

25    Administrative Law Judge Elizabeth Koennecke.  A supplemental

6

1    hearing with a vocational expert was subsequently conducted

2    by ALJ Koennecke on January 9, 2019.  Judge Koennecke issued

3    an unfavorable decision on January 17, 2019.  It was noted in

4    her decision that there were prior filings of Title II

5    application in October of 2011 and Title II and Title XVI

6    applications in May of 2014.  ALJ Koennecke found no basis to

7    reopen those prior unfavorable determinations associated with

8    those applications.

9            The matter proceeded to this Court by way of

10   challenge by plaintiff's counsel on her behalf.  It was filed

11   on April 20, 2020.  It resulted in a decision from Magistrate

12   Judge Christian F. Hummel on September 3, 2021, remanding the

13   matter.  The basis was the failure of the appeals counsel to

14   consider a subsequently-provided opinion of Dr. Anne Calkins,

15   identified by plaintiff in the submission of that opinion as

16   a treating source.

17           The matter was then remanded by the appeals counsel

18   on March 5, 2022.  Judge Koennecke conducted a hearing on

19   February 28, 2023, with a vocational expert and subsequently

20   issued another unfavorable decision on March 9, 2023.  This

21   action was commenced on May 16, 2023, and is timely.  In her

22   second decision, ALJ Koennecke applied the familiar five-step

23   sequential test for determining disability.

24           She concluded at step one, that plaintiff had not

25   engaged in substantial gainful activity since November 4,

7

1    2013.  Although she did note that plaintiff worked in

2    catering in 2014, but -- and did not include that on her work

3    history, but there is no report of any earnings associated

4    with that.

5              At step two, ALJ Koennecke concluded that plaintiff

6    does suffer from severe impairments that impose more than

7    minimal limitations on her ability to perform work-related

8    functions including obesity, myofascial pain syndrome, and

9    all mental impairments, as variously categorized.

10             At step three, ALJ Koennecke concluded that

11   plaintiff's conditions did not meet or medically equal any of

12   the listed presumptively disabling conditions set forth in

13   the Commissioner's regulations specifically addressing

14   obesity under Social Security Ruling 19-2P, and the mental

15   impairments under listings 12.04, 12.6, 12.08 and 12.15.

16             After reviewing the evidence of record,

17   ALJ Koennecke next concluded that plaintiff retains a

18   residual functional capacity, or RFC, to perform light work

19   with exceptions, including the following:

20             She retains the ability to understand and follow

21   simple instructions and directions, perform simple tasks

22   independently, maintain attention and concentration for

23   simple tasks, regularly attend to a routine and maintain a

24   schedule, relate to and interact appropriately with all

25   others to the extent necessary to carry out simple tasks, and

8

1    to make occasional decisions directly related to the

2    performance of simple tasks in a stable work environment with

3    light work duties.

4           Applying that RFC at step four, ALJ Koennecke

5    concluded that plaintiff is incapable of performing her past

6    relevant work and proceeded to step five, where with the

7    assistance of testimony from a vocational expert she

8    concluded that plaintiff is capable of performing work that

9    is available in the national economy and cited, as three

10   examples, positions of mail clerk, sales attendant, and

11   cashier two.

12          As counsel knows, the Court's function in this case

13   is limited to determining whether the correct legal

14   principles were applied and the resulting determination is

15   supported by substantial evidence which is defined as such

16   relevant evidence as a reasonable mind would find sufficient

17   to support a conclusion.

18          The Second Circuit noted in *Brault vs. Social

19   Security Administration Commissioner* 683 F.3d 443 from the

20   Second Circuit in 2012 that this is an extremely differential

21   standard.  More rigorous than the clearly erroneous standard

22   that we as lawyers are familiar with.  That was reiterated

23   later in *Schillo vs. Kijakazi,* 31 F.4th 64 from the Second

24   Circuit, April 6, 2022.

25          In this case, plaintiff raises several contentions,

1    which I have kind of boiled down.  First, she challenges the

2    RFC determination and argues that it results in errors --

3    results from errors in weighing the various medical opinions

4    in the record.  She challenges both the physical aspects,

5    that being the ability to stand and walk for six to eight

6    hours a day and the need -- no need to shift positions, and

7    the mental aspects.  Specifically, the requirement that

8    plaintiff remain on task, she attend, and -- regularly, and

9    in her ability to relate to others.  She also argues that at

10   step two, the ALJ committed error by not finding that

11   plaintiff's left knee condition was a medically determinable

12   impairment.

13        Pivotal to a disability determination is an ALJ's

14   RFC assessment, which represents a range -- the finding of a

15   range of tasks that the claimant is capable of performing,

16   notwithstanding his or her impairments at issue.  20 CFR

17   Sections 404.1545(a) and 416.945(a).  Ordinarily, RFC

18   represents a claimant's maximum ability to perform sustained

19   work activities in an ordinary setting on a regular and

20   continuing basis claiming eight hours a day for five days a

21   week or an equivalent schedule.  An RFC determination is

22   informed by consideration of a plaintiff's physical and

23   mental abilities, symptomology, and other limitations that

24   could interfere with work activities on a regular and

25   continuing basis, as well as all of the relevant medical and

1    other evidence.  *Tankisi v. Commissioner of Social Security,*

2    521 F. Appendix 29, 2nd Circuit 2013.

3              In this case, as I indicated, the issues really

4    boil down to whether plaintiff would be unable to perform,

5    based on being off task, absent, as well as her inability to

6    relate to others.  And physically, whether plaintiff can meet

7    the standard work requirements of light work and whether she

8    would need to change positions is something that is not

9    incorporated into the RFC.

10             Mentally, there is -- I guess I should say that

11   light work does require the ability to stand or walk a total

12   of approximately six hours in an eight-hour workday.  The

13   requirements of light work are included in 20 CFR Section

14   404.1567(b), as well as Social Security Ruling 83-10, and are

15   fleshed out in the Second Circuit's decision in *Poupore vs.*

16   *Astrue,* 566 F. 3d 303 from 2009.  Mentally, there are several

17   opinions in the record.  There is the opinion of Dr. T.

18   Harding.  It was technically a prior administrative medical

19   finding.  It is from September 6, 2019.  It appears at 221 to

20   256 of the administrative transcript.

21             In assessing the so-called B criteria, Dr. Harding

22   concluded that plaintiff is moderately limited in social

23   functioning and moderately limited in maintaining

24   concentration, persistence, or pace.  The ultimate mental

25   residual functional capacity finding of Dr. Harding is,

quote, based upon a review of the available medical evidence of record, the claimant is capable of simple, unskilled work on a sustained basis.  The ALJ concluded that that opinion is entitled to great weight, at page 1028 of the administrative transcript, with regard to the RFC, and did not comment on the B criteria worksheet.

Dr. Harding obviously is a non-examining physician who -- a psychologist, who had the benefit of available records at the time that opinion was rendered.  I agree that the -- one, there is a body of case law that suggests that one can infer from such an opinion that plaintiff is able to meet the requirements of a -- the ability to perform on a sustained basis for an eight-hour workday for a five-day week.  *Annjeanette B. vs. Kijakazi,* 2023 WL 3040663 from the Northern District of New York, April 21, 2023.

However -- and I also know and agree that a prior administrative medical finding can, can provide substantial evidence to support a determination if it is consistent with the record.  That's *Woytowicz v. The Commissioner of Social Security,* 16 WL 6427787 from October of 2016.  The report and recommendation of Magistrate Judge William B. Carter was adopted at 2016 WL 6426385 in October of 2016.

However, there is a body of case law that suggests in mental health cases, it is inherently less valuable because of the subjective nature of mental impairment.  I

1    should say that the analysis of medical opinions in this case

2    is governed by the former regulations because plaintiff's

3    application was filed prior to March 17, 2017.  Under those

4    regulations, the ALJ was required to consider whether the

5    opinion was consistent with and supported.  Those are the

6    factors that are key under the new regulations, of course.

7    And a weight to be given is subject to factors, including

8    frequency, length, nature, and extent of treatment and the

9    amount of medical evidence supporting the opinion, if it is a

10   source opinion, whether it is consistent with the remaining

11   medical evidence and whether the physician is a specialist.

12   And of course, as always, an ALJ must flesh out and provide

13   good reason for the weight afforded to any opinion of record.

14   If it is a treating source, of course, it is entitled to

15   controlling weight, if it is supported in this case.

16          So in determining -- in reviewing this case,

17   Dr. Harding's opinion stands in stark contrast to a great

18   body of evidence, including evidence from two consultative

19   examiners, as well as plaintiff's treating sources.  And as

20   will be seen, I find that Dr. Harding's opinion is not

21   supported by substantial evidence and is fatally vague with

22   respect to plaintiff's functioning in areas being off task

23   and attendance and relating to others.

24          There is also an opinion from an examining

25   consultant Dr. Mary Ann Moore from May 18, 2016.  It's at 690

13

1    to 695 in the administrative transcript.  Dr. Moore concluded

2    that plaintiff has moderate to marked limitations in her

3    ability to maintain a schedule and to relate to others.  The

4    ALJ concluded that Dr. Moore's opinion was entitled to some

5    weight.  That's at 1027.  Significantly, ALJ Koennecke

6    acknowledges the marked -- the moderate to marked

7    limitations, but does not discuss it all while the marked

8    limitations were rejected or discounted, and I find that to

9    be an error.

10          There's an opinion from Dr. Amanda Slowik from

11   August 26, 2016.  She was another examining psychologist.  It

12   appears at 701 to 706 of the administrative transcript.

13   Dr. Slowik also finds moderate to marked limitations in the

14   ability of plaintiff to maintain a schedule and to relate

15   adequately to others.  Dr. Slowik's opinion is given some

16   weight at 1028, but the marked -- at least in this case, she

17   does say that the marked limitation is not indicated, but

18   does not elaborate as to why.

19          There are also several opinions from

20   Nurse Practitioner Caroline Murphy.  One is from October 30,

21   2018, and cosigned by licensed medical social worker Jessica

22   Meade.  It appears at 1388 to 1399 of the administrative

23   transcript that finds plaintiff is markedly limited, which is

24   defined as more than 33 percent in the ability to maintain a

25   regular attendance and perform within a schedule, but states

14

1    that the author of the opinion is unable to quantify the

2    percentage or number of absences.

3            There is another subsequent opinion from Nurse

4    Practitioner Murphy from February 27, 2019, that's at 1391 to

5    1392, finds a moderate limitation defined as 20 to 33 percent

6    in the ability to maintain regular attendance and perform

7    within a schedule.  Again, unable to quantify the specific

8    extent.

9            Significantly, on January 10, 2023, Nurse

10    Practitioner Murphy indicates at page 1538, there is no

11    change in plaintiff's condition.  The Administrative Law

12    Judge provided -- afforded Nurse Practitioner Murphy's

13    opinion very great weight at 1030, but found the marked

14    limitation to be inconsistent with the medical record,

15    plaintiff's activities of daily living, her normal mental

16    status exams, conservative treatment, ability to perform to

17    care for a family member, ability to attend appointments, and

18    her desire to pursue a career in phlebotomy.

19            Dr. Anne Calkins provided an opinion on March 15,

20    2019, that's at 1394 to 1395, found that plaintiff would be

21    off task 20 to 33 percent of the time, would be absent more

22    than four times per month.  The ALJ afforded this opinion

23    some weight at 1030, but found it to be speculative and

24    inconsistent with the record, including activities of daily

25    living.

15

1          Physician's Assistant Kacy Zelesnikar, who has

2     treated the plaintiff over time, issued an opinion on

3     June 28, 2018.  It's at 896 to 901.  She opined plaintiff

4     should reach off task 20 to 33 percent of the time and absent

5     three times per month.  She also noted that market

6     limitations to find as more than 33 percent in plaintiff's

7     ability to maintain regular attendance, a median of 20 to

8     33 percent limitation in the ability to perform within a

9     schedule, accept instructions and respond appropriately to

10     supervisors.

11          On January 6, 2013, at page 1530 and again at 1534,

12     Physician's Assistant Zelesnikar indicates there was no

13     change to plaintiff's condition.  ALJ Koennecke afforded

14     those opinions little weight, that's at 1028 to 1029, on the

15     basis that, one, she was not an acceptable medical source.

16     Two, ALJ Koennecke states that plaintiff was not treating

17     plaintiff's mental health condition.  And, three, the opinion

18     concerning off task and absenteeism is inconsistent with the

19     ability to attend medical appointments and is speculative.

20     She claims that it also loosens up a temporary condition

21     which ignores the opinion of the physician's assistant at 38F

22     and 39F that plaintiff's condition was unchanged.

23          Addressing the physical condition of the plaintiff,

24     Dr. Calkins, in her March 2019 opinion, stated that plaintiff

25     needs to be able to change positions every 15 minutes and can

1    only stand and/or walk two hours out of eight hours.

2         ALJ Koennecke concluded that this is inconsistent

3    with plaintiff's treatment records.  At 1030 of her opinion.

4    Physician Assistant Zelesnikar, on June 28, 2018, stated that

5    plaintiff would need the ability to change positions every 30

6    minutes and can stand and/or walk only five hours out of an

7    eight-hour day.

8         Dr. Gilbert Jenouri issued two opinions; one from

9    May 18, 2016, at 696 to 700.  He found moderate limitations

10   in plaintiff's ability to walk and stand two to four hours.

11   On August 26, 2016, at 708 to 715, Dr. Jenouri found mild

12   restriction in plaintiff's ability to walk, sit, and sit for

13   long periods.

14        ALJ Koennecke concluded that plaintiff's -- that

15   Dr. Jenouri's decision opinion from May of 2016 was entitled

16   to less weight and that the subsequent opinion was entitled

17   to some weight.  That's at 1029.

18        In my view, the ALJ's opinion is laced with errors.

19   The ALJ, as I indicated before, acknowledged Dr. Moore's

20   moderate to marked limitation opinion, but gave no

21   explanation as to why it was not reflected in the RFC.

22   That's at 1027.  *Loucks v. Kijakazi*, 2022 WL 2189293 from the

23   Second Circuit June of 2022, indicating that it was error in

24   a similar circumstance not prior to any explanation.  The

25   determining -- the finding of errors is also supported by

17

1    *Wayne I. v. Saul,* 2020 WL 3566626 from the Northern District

2    of New York, July 2020.

3            In that case, the late Judge Norman A. Mordue, one

4    of my colleague Judges, indicated, quote, "The ALJ's decision

5    affords Dr. Lewis's opinion considerable weight, but then

6    fails to support specifically explaining why she rejected

7    Dr. Lewis's findings of marked limitations to dealing with

8    stress and relating adequately with others."

9            Dr. Slowik acknowledges, marked limitations and the

10   ALJ acknowledges it, but does not state specifically why it

11   was rejected, other than stating in conclusory fashion that

12   it is, quote, "not indicated."  That's at 1028.

13           There is no explanation, moreover, as to how

14   Dr. Harding and Dr. Slowik's finding of moderate limitations

15   are accommodated in the RFC.  And, critically, Dr. Calkins

16   was identified in a submission to the Social Security

17   Administration appeals counsel by plaintiff's counsel as a

18   treating source.  We can't be sure because there are no

19   treatment records in the record from Dr. Calkins, but there

20   should have been a discussion as to whether Dr. Calkins was a

21   treating source.  And, if so, why her opinion would not be

22   entitled to controlling weight.  There is discussion of

23   neither in the decision.

24           I also find error in the statement by

25   Administrative Law Judge Koennecke that the physician's

18

1   assistant that has treated plaintiff since 2014 did not treat

2   plaintiff's mental conditions.  It's clear from my review of

3   the medical evidence that that's not true.

4           There is also a conclusory rejection of Physician's

5   Assistant Zelesnikar's opinion regarding the need to change

6   positions, which is consistent with Dr. Calkins.  There is no

7   opinion on that issue from Dr. Jenouri.  And there is no

8   state agency consultant who issued a prior medical finding

9   with regard to plaintiff's physical RFC.  It was a -- it was

10  performed by a single decision-maker whose decision is

11  entitled to no weight.

12          There is also error in no reconciliation of the

13  limitation on plaintiff's ability to stand and/or walk for

14  six hours out of an eight-hour day.  Dr. Calkins said two

15  hours.  Physician's Assistant Zelesnikar said five hours.

16  Dr. Jenouri did find moderate limitations in the earlier

17  decision, but not in the later decision.  But aside from

18  perhaps Dr. Jenouri and the evidence is -- strongly suggests

19  that both plaintiff's inability to perform that function of

20  stand or walking six hours in an eight-hour day is required

21  by light work.

22          In terms of the off task and attendance, it's not

23  enough to say it is speculative, and the courts have said the

24  failure -- the ability to attend medical appointments does

25  not sufficiently indicate the ability to maintain a schedule.

1   *Rucker v. Kijakazi,* 48 F.4th 86 from the Second Circuit 2022.

2   All opinions that have assessed the ability to perform

3   consistent with a schedule suggests that plaintiff is not

4   employable.  And those appear to be supported by treatment

5   notes observing plaintiff's mental health condition.

6           As I indicated, I think it was error to reject out

7   of hand, Physician's Assistant Zelesnikar's opinion.  She

8   would, by the way, be a treating source under the new

9   regulations, but she was plaintiff's long-term primary care

10  provider.  As I indicated, it was error to say that she did

11  not treat plaintiff's mental health condition.  And the

12  ability to keep medical appointments under *Rucker* is not

13  sufficient to show the ability to perform consistent with a

14  schedule, and the fact that it may be speculative in and of

15  itself is not sufficient.  *Annjeanette* B.

16          I find it difficult there was no reconciliation

17  between the two opinions from Dr. Jenouri, which was given

18  only three months apart.  *Rucker* indicates that.  There's no

19  explanation of how the moderate limitations identified by

20  Dr. Harding, Dr. Moore, Dr. Slowik, et cetera, are consistent

21  with the RFC, since there is no limitation in the RFC

22  addressing off task and absences.

23          *Reynolds v. Colvin,* 2014 WL 4184729 from the

24  Northern District of New York, March, 21, 2014, the ALJ's

25  reliance on plaintiff's activities of daily living are not

20

1    sufficiently linked to the ability to maintain a schedule.

2    In other words, there is no logical bridge that has been laid

3    out for us by the Administrative Law Judge as to how they

4    support the ability to perform, consistent with a regular

5    schedule.

6              In that precludes meaningful judicial review.

7    There is also --

8                   (Peter Gorton, Esq. was disconnected from the

9                    teleconference.)

10             THE COURT:  We will wait a second for

11   Attorney Gorton to re-enter.

12                  (Peter Gorton, Esq. was reconnected to the

13                   teleconference.)

14             THE COURT:  As I indicated, the ALJ's general

15   reference without specific treatment records is insufficient.

16   *Annjeanette B.,* I cited that case earlier.

17             I also think there might be some problem with the

18   step two determination.  I know that the test at step two is

19   extremely modest.  It tended to screen out only the -- only

20   the -- it requires the ALJ to identify severe impairments.

21   That is, any that significantly limit a physical and mental

22   ability to perform basic work activities.  It's de minimus

23   and it tends to screen out only the truly weakest of cases.

24   So I think the right knee of the plaintiff is considered,

25   but -- and not found to be a medically determinable

1   impairment.

2         There is no discussion of the left knee as to

3   whether to conduct a -- consistent with medical impairment --

4   a medically determinable impairment.  The ALJ simply

5   indicates that it does reference left knee pain at 1017.  It

6   does not determine whether the impairment is or is not

7   medically determinable.

8         At 1018, there is a statement, however, for any

9   symptoms related to the claimant's left knee impairment

10  discussed below have been considered under claimant's

11  myofascial pain syndrome diagnosis.  So I think there may be

12  error in not including left knee as a medically determinable

13  impairment.  Whether it is harmful or not, I am not sure,

14  because there is that statement that the condition and the --

15  and the associated symptoms have been considered.  It is

16  potentially harmful because it bears on the ability to stand

17  and walk consistent with light work.  So I'm not making a

18  finding there, but I think the matter should be examined on

19  remand.

20        So, in short, I am granting judgment on the

21  pleadings to the plaintiff.  I find multiple errors that

22  result in infecting the ultimate determination of no

23  disability.  I am tempted to find a direct -- to find

24  disability and direct a finding, but -- in light of the age

25  of the case, but I simply couldn't find persuasive evidence

22

1     of disability.  And I think if plaintiff was limited to

2     sedentary work, a vocational expert could potentially find

3     positions that plaintiff is capable of performing.

4             So I am going to remand the matter consistent with

5     Commissioner's regulations.  I think it will be assigned to a

6     new Administrative Law judge, which I think will hopefully

7     provide a fresh look at all of the relevant evidence in this

8     case, which is massive.

9             So on remand, the Administrative Law Judge should

10    examine both the mental and physical impairments of the

11    plaintiff and -- resulting from the patient and should state

12    any conclusions with sufficient clarity to permit proper

13    judicial review.

14            Thank you again, both of you.  I hope you have a

15    good rest of the day and rest of your summer.

16            MR. GORTON:  Thank you, your Honor.

17            MS. BROWN CASEY:  Thank you, your Honor.

18                (Court adjourned, 12:03 p.m.)

19

20

21

22

23

24

25

```
1                    CERTIFICATE OF OFFICIAL REPORTER

2

3    I, LISA M. MAZZEI, RPR, Official U.S. Court

4    Reporter, in and for the United States District

5    Court for the Northern District of New York, DO

6    HEREBY CERTIFY that pursuant to Section 753, Title

7    28, United States Code, that the foregoing is a true

8    and correct transcript of the stenographically

9    reported proceedings held in the above-entitled

10   matter and that the transcript page format is in

11   conformance with the regulations of the Judicial

12   Conference of the United States.

13

14                        Dated this 24th day of July, 2024.

15

16

17                        /S/ LISA M. MAZZEI

18                        LISA M. MAZZEI, RPR
                          Official U.S. Court Reporter
19

20

21

22

23

24

25
```